IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOSHUA CALHOUN | § | |
| v. | § | CIVIL ACTION NO. 6:11cv4 |
| KELSEY WYATT, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Joshua Calhoun, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged constitutional violations during his confinement in the Henderson County Jail. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). As Defendants, Calhoun named officers Kelsey Wyatt, John Long, and an officer identified as Howard, who has previously been dismissed. Officer Wyatt was known as Kelsey Anders at the time that the incident took place, but has since married and changed her name to Wyatt.

In his complaint and at an evidentiary hearing, Calhoun states that on April 2, 2009, he was confined in the Henderson County Jail. He was trying to speak to a ranking officer, but Officer Wyatt came to his cell and told him that he could not see anyone and if he pushed the intercom button she was going to put him in a restraint chair. He pushed the intercom button and told the officers that Wyatt was harassing him at his door. Wyatt walked away laughing, got the restraint chair, and put it in front of his door.

Calhoun states that he carried his legal mail to the chair and put the papers under his left leg. He was placed in the restraint chair with nothing said about the papers. Wyatt strapped his legs and Officer Long strapped his chest and hands. After he was fully restrained, Calhoun says, Wyatt tried to get the papers out from under his leg. Calhoun states that he pushed down on the straps, putting

1

weight on the papers so that Wyatt could not get them. Wyatt then stepped back about four feet and "maliciously pepper sprayed" him.

Calhoun states that he could not move anything but his head and that he was shaking his head, trying to get the spray out of his eyes. Long pulled his head back against the chair and Wyatt walked up to him and used another can of pepper spray at point-blank range, right up his nose. Calhoun couldn't breathe and the other officers started to panic. They took him into his cell in front of his shower while he screamed and gasped for breath. Calhoun states that he was then "pushed into the shower head first to the floor and they turned the hot water on me." He started coughing up blood and his nose bled as well. Ever since being pepper-sprayed, Calhoun says that he has suffered seizures.

Calhoun stated that the officers accused him of trying to kick Wyatt, but this wasn't true because his legs were shackled. He acknowledged pushing the intercom button three or four times but denied that he was "constantly" pushing it. He again said that Wyatt told him that no one else was coming and to stop pushing the button.

Officer Long testified at the evidentiary hearing that Calhoun pushed the intercom button so many times the picket officer had to come tell him to stop. Calhoun also kicked and beat on the cell door. Calhoun was placed in the restraint chair for his own protection. Long stated that Anderson was not allowed to have anything in his possession while in the restraint chair, but he had legal mail under his leg, and "acted out" when the officers tried to retrieve it, including trying to kick the officers.

Long stated that Calhoun sarcastically told Wyatt that he would not try to kick her. He explained that pepper spray is a last resort and noted that everyone in the area is affected by it. He denied that anyone held Calhoun's head or forced his eyes open, and stated that Calhoun was only sprayed once, because he had tried to kick Wyatt. Towels were brought immediately afterward for decontamination. Nurse Murphy came right away when Long called her.

Officer Wyatt testified that she heard Calhoun arguing with an officer named Howard. Calhoun said that he wanted to see the sheriff and Wyatt told him that he had to go through channels. She told him not to abuse the intercom button and that he would get written up if he did.

Wyatt stated that she explained the appeal process to him and left. He began kicking and banging on the door, so she came back. When she did, she saw him pushing the intercom button, so she decided to put him in the restraint chair.

Calhoun at first refused to sit in the chair, but then he did. He had legal papers with him and Wyatt was finally able to get these papers away from him. Calhoun kept trying to kick her so she pepper sprayed him. Wyatt stated that Calhoun's legs were not restrained, but only his upper body.

Calhoun testified on redirect examination that prior to this incident, he had a clean bill of health, but after he got out of the jail, he began suffering seizures and blackouts. He said that he has been treated for *grand mal* and other seizures, and that a doctor had told him that being pepper sprayed might have caused these seizures. Calhoun again stated that he had never had seizures prior to this episode.

## The Defendants' Motion for Summary Judgment

The Defendants Wyatt and Long have filed a motion for summary judgment. This motion argues that Calhoun was resisting when he was placed in the chair and that he butted his head and chest out in an effort to keep from being restrained. The Defendants also argue that Calhoun tried to kick while his legs were being restrained, and he was pepper sprayed at that time to gain compliance from him and keep him from kicking. They state that he was only pepper sprayed one time and that he was promptly placed in the shower. He was also supplied with towels and clean water to flush his eyes. The Defendants argue that the use of force was reasonable under the circumstances and that they are entitled to qualified immunity.

The Defendants also note that the district attorney of Henderson County conducted an independent investigation of the incident. During this investigation, Calhoun admitted that he had

been pushing the intercom button and banging on the cell door, and that he told the female officer (Wyatt) that "I ain't going to kick you bitch." The investigation also revealed that Calhoun had not been fully restrained while in the chair and that prior to being sprayed, he had been making movements toward Wyatt. The district attorney concluded that Calhoun had been sprayed once and not twice and that he was given towels and water after the incident to flush out his eyes. Finally, the Defendants state that there have been no recorded incidents of pepper spray causing seizures. Calhoun did not file a response to the motion for summary judgment; however, his sworn pleadings and testimony are competent summary judgment evidence, and all of the summary judgment evidence will be viewed in the light most favorable to Calhoun.

## The Defendants' Summary Judgment Evidence

The first item of summary judgment evidence is the videotape of the incident. The video opens at 13:52:26 with a view of four officers bringing the restraint chair into the corridor. Wyatt is the only female officer present. The cell door is opened and Calhoun is brought out. He is put into the chair at the 13:53:17 mark. At 13:53:21, Calhoun places the legal papers under his leg. The officers try to retrieve them, but Calhoun visibly resists. At 13:53:39, Wyatt tries to move Calhoun's left leg to the side, but Calhoun moves it back. At 13:53:43, Calhoun starts bucking his upper body. Wyatt squats down in front of Calhoun at 13:53:57 and tries to put restraints on his legs. She stands up at 13:54:27 and tries to slide Calhoun's left leg aside, but he again moves it back. Calhoun can be seen holding his knees together at 13:54:33.

At 13:54:39, the male officers slide the restraint chair backwards a short distance, placing its left side against the wall. Wyatt leans over between two of the officers. Her back is to the camera, but it is clear from Calhoun's reaction that she sprays him from close range at 13:54:45. The officers step back and Calhoun immediately starts kicking his left leg, making it clear that this leg was not in restraints. Calhoun bends over in the chair and shakes his upper body. The male officers help him to sit up straight and Wyatt steps to her left and opens the cell door at 13:55:09. The restraint chair is turned and one officer gets behind it to wheel it in the cell by lifting the front wheels

4

off the ground and rolling it on the back wheels. Calhoun is still shaking as he is wheeled into the cell at 13:55:20. Two guards go into the cell ahead of Calhoun.

An officer in a dark shirt goes into the cell at 13:55:28. The officer who wheeled Calhoun into the cell steps out of the cell briefly at 13:55:42, then goes back in. At 13:55:53, a group of four officers, including Wyatt, is standing at the cell door looking in. At 13:56:03, the officer who wheeled Calhoun into the cell comes out. One of the guards who had been standing at the door leaves. At 13:56:19 the officer in the dark shirt comes out of the cell. He then steps back in, followed by the officer who had wheeled Calhoun into the cell. At 13:56:43 the officer who took Calhoun into the cell comes out. The officer in the dark shirt exits the cell at 13:56:55. He walks down the hallway a short way and then comes back. At 13:57:20 the two guards who had gone into the cell ahead of Calhoun come out.

Wyatt leaves the area at 13:57:29. Three guards remain at the cell door, which is still open. At 13:58:20 one guard steps into the doorway of the cell. A few seconds later two officers show up with towels and take them in the cell. Wyatt reappears on camera just as the video ends, at 13:58:57.

The Defendants also furnish the affidavits of Wyatt and Long as summary judgment evidence, setting out their version of events. These affidavits recount that Calhoun was removed from his cell for repeatedly pressing the intercom button and hitting and kicking the cell door. He resisted the officers while being placed in the chair and was pepper sprayed in an attempt to gain compliance. He was then placed in the shower.

The final item of summary judgment evidence is the report of the investigation conducted by the Henderson County District Attorney. This report states that the sheriff's department contacted the DA's office in reference to an alleged inappropriate treatment of Calhoun. An investigator named J. Miller was assigned to the case.

Miller met with Calhoun, who told him that he had been placed in separation for 120 days and wanted to see a supervisor. Calhoun was pushing on the intercom button and banging on the door when "the female officer that was on his disciplinary board" came to his cell and told him to

5

stop. Calhoun stated that he was placed in the restraint chair and "maced twice for no reason." He added that he had told Wyatt "I ain't going to kick you bitch" and that he was fully restrained when sprayed.

Miller reviewed the videotape and concluded that Calhoun had not been fully restrained, but that in fact his left leg was free. Prior to being sprayed, Miller said, Calhoun had been making movements with his body including movements towards Wyatt prior to being sprayed. Miller also stated that Calhoun was sprayed once, not twice.

Miller noted that he had obtained copies of Calhoun's disciplinary records, which showed that Calhoun had been charged with disciplinary offenses primarily stemming from false accusations against officers. Miller determined that Wyatt had acted within jail guidelines and found no evidence of criminal activity.

## Legal Standards and Analysis

Calhoun's complaint is that Wyatt and Long used excessive force on him through the pepper spray. Although he also refers to being "dumped out of the chair" into the shower, he does not identify the officers responsible for this nor assert that he suffered any harm thereby; his lawsuit focuses on the pepper spraying.

The Fifth Circuit has explained that an excessive force claim by a pretrial detainee is governed by the Due Process Clause of the Fourteenth Amendment. Noel v. Webre, 426 Fed.Appx. 247, 2011 WL 1899571 (5th Cir., May 18, 2011), *citing* Brothers v. Klevenhagen, 28 F.3d 452, 455-56 (5th Cir. 1994). The question is whether the force is applied in a good faith effort to restore discipline or maliciously and sadistically for the very purpose of causing harm. Valencia v. Wiggins, 981 F.2d 1440, 1443-45 (5th Cir. 1993). There are five factors to consider in answering this question, including the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Valencia, 981 F.2d at 1446 n.29, *citing* Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992).

In this case, the summary judgment evidence shows that Calhoun was sprayed in the face with pepper spray; although he claims that he was sprayed twice, the videotape shows only one spraying. The use of pepper spray is not *per se* a use of unreasonable force. Wagner v. Bay City, 227 F.3d 316, 324 (5th Cir. 2000); Clemmons v. Greggs, 509 F.2d 1338, 1340 (5th Cir. 1975). Other courts have reached the same conclusion. Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984) (use of Mace on recalcitrant inmate confined in his cell did not violate the Constitution); Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984) (use of chemical agent when inmate refused to obey a direct order did not violate the Constitution). Calhoun claims that he suffered seizures after being pepper sprayed when he had never suffered seizures before; although he provides no medical evidence to support his claim that being pepper sprayed caused him to suffer seizures, the Court will assume *arguendo* that the first Hudson factor weighs in Calhoun's favor.

The second Hudson factor is the need for the application of force. The summary judgment evidence shows that Calhoun was banging on his cell door and using the intercom button in an effort to call a supervisor. Wyatt ordered him to stop but he did not. When Calhoun was placed in the restraint chair, he secreted legal papers under his leg and resisted efforts to retrieve them. Calhoun also resisted the efforts to secure him in the restraint chair, as can be seen on the video. Calhoun's repeated refusals to comply with multiple orders resulted in the use of force of which he complains.

In Baldwin v. Stalder, 137 F.3d 836, 838 (5th Cir. 1998), a group of inmates were being transported by bus to another institution because of their participation in a disturbance the day before. While the bus was parked, some of the inmates began jumping on the seats, spitting at officers outside, rocking the bus, and otherwise causing a disturbance. After the prisoners had ignored three orders to stop, the senior ranking officer, Herron, fired a two-second burst of pepper mace down the middle of the bus. The inmates were not allowed to wash off the pepper mace until they arrived at their destination three hours later.

A bench trial was held and the court ruled against Herron and in favor of the plaintiff on this claim. On appeal, the Fifth Circuit reversed this holding and rendered judgment in favor of Herron,

7

holding that the trial court had clearly erred in finding that the two-second burst of mace was not a good faith effort to restore discipline.

In the present case, the videotape clearly shows that Wyatt and Long were acting in a good faith effort to restore the discipline being breached by Calhoun's conduct. There is no evidence that either of these officers acted maliciously or sadistically for the very purpose of causing harm. The videotape shows that after Calhoun struggled against the officers in the chair and resisted the efforts to retrieve the papers he had placed under his leg, Wyatt administered one brief shot of pepper spray. Although Calhoun complained that Long held his head the second time he was sprayed, the videotape shows that there was no second time because he was only sprayed once, in a burst lasting less than one second. The second Hudson factor weighs heavily against Calhoun.

The third Hudson factor concerns the relationship between the need and the amount of force used. As noted above, the need for the application of force was created by Calhoun's non-compliance with multiple orders and his resistance even after being placed in the restraint chair. The force used consisted of a single burst of pepper spray lasting less than one second. The Eleventh Circuit has stated that "pepper spray is a very reasonable alternative to escalating a struggle" and that as a means of imposing force, it is "generally of limited intrusiveness" and is designed to disable a person without causing permanent injury. Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002); *see also* Soto, 744 F.2d at 1270; Clemmons, 509 F.2d at 1340. The use of force was not excessive to the need. The third Hudson factor weighs against Calhoun.

The fourth Hudson factor concerns the threat reasonably perceived by the responsible officials. In this case, Calhoun's refusal to comply with multiple orders, and his resistance even after being placed in the restraint chair, plainly presented a threat to the security of the institution. Baldwin, 137 F.3d at 840-41; Thomas v. Comstock. 222 Fed.Appx. 439, 2007 WL 807037 (5th Cir., March 16, 2007). Inmates do not have a right to cause disturbances creating a security problem nor to comply with orders from jail officials. *See, e.g.*, Schneider v. Kaelin, civil action no. 2:12cv233 (S.D.Tex., dismissed April 18, 2013). The fourth Hudson factor weighs against Calhoun.

The final factor identified by the Fifth Circuit in Hudson concerns the efforts made to temper the severity of a forceful response. The videotape in this case shows that Wyatt sprayed Calhoun with a single burst of pepper spray lasting less than one second in response to his resistance and his refusal to comply with multiple orders. Immediately after being sprayed, he was returned to his cell. The video does not show what happened inside the cell. While the videotape does show that towels were brought to the cell, the fifth Hudson factor is largely inconclusive.

Furthermore, Hudson itself requires a showing that the force was used maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to restore discipline. Hudson, 112 S.Ct. at 999; Valencia, 981 F.2d at 1443. In this case, the summary judgment evidence shows that the force was used in a good faith effort to restore the discipline breached by Calhoun's conduct, rather than maliciously and sadistically for the very purpose of causing harm. Calhoun acknowledges that he pushed the intercom button after being told to stop and that he refused to relinquish the papers he was holding under his leg, and the videotape shows that he resisted having restraints placed on him and prevented the officers from taking the papers he was holding. Calhoun's conduct set the stage for the use of force, and the evidence wholly fails to show that Wyatt or Long overreacted to the point that their conduct amounted to malicious and sadistic attempts to cause harm rather than a good faith effort to restore the discipline breached by Calhoun's actions. Calhoun's claim of excessive use of force is without merit.

## Qualified Immunity

The Defendants also interpose the defense of qualified immunity. The Fifth Circuit has stated that a qualified immunity defense serves to shield a Government official from civil liability for damages based upon the performance of discretionary functions if the official's actions were reasonable in light of then clearly existing law. Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir. 2005), *citing* Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001).

Although qualified immunity is nominally an affirmative defense, the plaintiff bears a heightened burden to negate it once it is properly raised. Brumfield, 551 F.3d at 326; *see also*

9

McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense).

The Fifth Circuit has explained that to discharge this burden, the plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law, and second, that the defendant's actions were objectively unreasonable in light of the law which was clearly established at the time of the actions complained of. Atteberry, 430 F.3d at 253; Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004). These two prongs may be considered in either order. Saucier v. Katz, 533 U.S. 194, 201 (2001).

The Fifth Circuit addressed a similar qualified immunity claim in Thomas v. Comstock, 222 Fed.Appx at 441. In that case, the plaintiff Lorenzo Thomas was ordered to move to a new housing assignment, but refused to comply because he believed his new housing assignment posed a threat to his life. Major Hickson was aware of Thomas' concerns but ordered Lt. Comstock to move Thomas, authorizing the use of force if necessary, including the use of pepper spray and a five-man response team.

Comstock ordered Thomas to submit to hand restraints to allow him to be moved. Thomas refused, even after being told that force had been authorized to secure compliance. Comstock told Thomas that he was going to use the spray, and Thomas covered his face with a shirt. Comstock then administered a 1.8 ounce burst of spray.

A jury trial was conducted and the jury awarded Thomas one dollar in damages. Comstock filed a motion for judgment as a matter of law claiming, *inter alia*, that he was entitled to qualified immunity. The district court denied the motion, and Comstock appealed.

On appeal, the Fifth Circuit cited Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) in holding that under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages so long as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have

known. Thus, in deciding whether Comstock was entitled to qualified immunity, the Fifth Circuit examined whether Thomas had alleged the violation of a constitutional right, and whether Comstock's conduct was objectively reasonable in light of then-clearly established law. After considering these questions, the Fifth Circuit concluded that Comstock's conduct was not objectively unreasonable in light of clearly established law, entitling him to qualified immunity. The Fifth Circuit thus vacated the judgment of the district court and rendered judgment in Comstock's favor.

In the present case, Calhoun has not shown that the conduct of Wyatt or Long was objectively unreasonable in light of clearly established law. The law in effect in April of 2009 allowed officers to use force in a good faith effort to restore discipline, and permitted the use of pepper spray on prisoners who were resisting or refusing to comply with orders. Wagner, 227 F.3d at 324 (use of chemical spray was an objectively reasonable response where a suspect resisted arrest, even though the suspect stopped breathing and died). Because Wyatt and Long did not act in an objectively unreasonable manner in light of clearly existing law, they are entitled to qualified immunity.

## Conclusion

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the non-movant must direct the court's attention to

admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical

doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court added that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." Little, 37 F.3d at 1075.

The fact that a non-movant failed to respond to a motion for summary judgment is not itself a basis for granting that motion; rather, the movant has the initial burden of proof to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law. John v. State of Louisiana Bd. of Trustees for State Colleges and Universities, 757 F.2d 698, 708 (5th Cir. 1985). Once the movant has done so, the burden then shifts to the plaintiff, who must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims; the district has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). As for material facts on which the plaintiff will bear the burden of proof at trial, he must come forward with evidence sufficient to enable him to survive a motion for directed verdict at trial. Stults, 76 F.3d at 656; see also Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim).

In this case, the pleadings and the summary judgment evidence show that there are no disputed issues of material fact and the Defendants are entitled to judgment as a matter of law. The Defendants' motion for summary judgment is meritorious, and it is accordingly

ORDERED that the Defendants' motion for summary judgment (docket no. 46) is hereby GRANTED and the above-styled civil action is DISMISSED with prejudice. It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this **2** day of **May, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE